Campbell, Chief Justice,
delivered the opinion of the court:
The facts are practically undisputed and the question for decision is whether the plaintiff corporation was liable to an income tax under the revenue act of 1921 upon the rental for plaintiff’s properties paid by another corporation under the terms of a fifty-year lease, whereby the latter, as lessee, agreed to pay and did pay the stipulated rent to the stockholders in the lessor company. The tax in question was paid, and upon plaintiff’s appeal to the Commissioner of Internal Revenue a refund of it was refused.
By a leasehold agreement dated May 12, 1882, and a supplemental leasehold agreement between the same parties, dated November 15, 1883, plaintiff leased to the Western Union Telegraph Company two trans-Atlantic cables and certain other properties for the term of fifty years, for the yearly rental of $700,000, payable quarterly. Its undertaking in that regard appears in the fifth paragraph of the lease, as follows:
“ Fifth. The Telegraph Company hereby agrees to pay for the rental of the two trans-Atlantic cables, the land lines, equipments, and other property and assets of the Cable Company as aforesaid, the yearly sum of seven hundred thousand dollars ($700,000) in each year, in quarterly instalments of one hundred and seventy-five thousand dollars ($175,000) at the end of each quarter, to wit: On the first days of September, December, March, and June, respectively, the said payments commencing on the first day of September, 1882, and that such payments shall be made directly to the stock *331 holders of the Cable Company, to secure which payments the Telegraph Company further agrees that its secretary shall sign a - guarantee and affix the seal of the company thereto for the payment of dividends at the rate of five per cent per annum, payable quarterly as above mentioned, on the certificates of the capital stock of the Cable Company, to be issued to the American Cable Construction Company, not to exceed the aggregate of fourteen millions of dollars, in payment for the two cables, in accordance with an agreement of even date herewith between those companies.”
In addition to this rental the lessee agreed to pay the lessor a further sum of not exceeding $2,500 per year, to be used for the purpose of defraying the necessary expenses of the maintenance of the organization of plaintiff as a corporation, the latter agreeing to maintain the same.
In accordance with the terms of the quoted paragraph the Telegraph Company, lessee, caused to be endorsed upon the several certificates of stock in plaintiff corporation its “ guarantee ” as follows: “ The Western Union Telegraph Company hereby for value received guarantees quarterly dividends of one and one-quarter per cent, payable at the end of each quarter ” (dates named), “ upon the par value of the capital stock represented by the within certificate, in accordance with the terms and conditions of the agreement,” above mentioned. The annual rental as it accrued has been paid to the stockholders in the lessor company except to the lessee Telegraph Company, which is itself the owner of 23,094 shares of the capital stock of lessor. Plaintiff prepared and duly filed with the collector of internal revenue for the second district of New York its tax returns, on Form 1120, for the calendar year 1922, which showed $73,016.25 as the total amount of tax. Included in the amount, upon which its net income was based, was the sum of $584,130 paid by the lessee to the several shareholders in the lessor company other than itself, it thus reporting an income of $584,130 on the rental item.
There is no contention that the stipulated rental would not be, in the hands of the lessor, income subject to the provisions of the revenue act of 1921, 42 Stat. 227, 238, 254. Eisner v. Macomber, 252 U.S. 189, 207. The rent was paid, by lessee, in the amount stated, not directly to the lessor, but *332 to its stockholders in accordance with.the leasehold agreement. The brief for plaintiff thus states the issue: “ The tax liability of the plaintiff, under the circumstances, depends upon two questions: First, whether the stockholders of the plaintiff in case of default could sue the Western Union Telegraph Company directly in their own right instead of in the right of the corporation; and, second, whether at any time since the lease was consummated the plaintiff corporation could assert a claim - for the rental in its own right or could alter or vary the rights of any stockholder therein without the consent of such stockholder.” We do not think that because the stockholder could sue the Telegraph Company directly upon its undertaking in the guarantee (Bowers et al. v. Interboro Rapid Transit Co., 121 Misc. R. 250, affirmed 202 N.Y. Supp. 917, 208 App. Div. 768, and Peabody case, 212 App. Div. N.Y. 502, decided April 3, 1925), that fact becomes an essential element in the conclusion to be reached upon the question before this court. The lessee not only agreed to make payments of'the rent directly to the stockholders in lessor corporation but further stipulated to sign, and did sign, a guarantee for the payment of dividends at the stated rate on the certificates of the capital stock of the latter. This guarantee carries notice of the terms of the lease under which it is given. The relation thus arising between the Telegraph Company and the stockholder in the Cable Company rests upon the undertaking itself. In guaranteeing a dividend there is an implied admission that corporate action by the lessor is necessary in declaring it from time to time, or in the continued existence of the dividend as declared when the lease was made. The lessor was to continue in existence and the lease expressly provided it should so continue. It is an entity distinct from its stockholders, and, as was said by Walker, Circuit Judge, in Blalock v. Georgia Co., 246 Fed. 387, 389, due recognition may be given to this condition, without denying effect to the obvious fact that its stockholders are the real beneficiaries of its existence and activities and that such a corporation is but assuming one of its normal functions when it makes provision for a ratable distribution among its stockholders of net gains accrued, what *333 ever may be the form such a provision assumes. The rent was a liability of the lessee to the lessor, because it was a return for the lessor’s property, passing by the lease. The circumstance that by agreement the lessee undertook to make payments to stockholders instead of to the corporation itself does not alter the fact that the payment is of rent, due primarily to the lessor. The failure to make these payments as agreed would be a breach of the covenant to pay rents, and in that case the other party to the contract, the lessor, would have its legal remedies. The lease recognizes that the payments for the property are rents and that the stockholders receive them as dividends, but the making of payments direct to the stockholders is merely one of method. It does not change the real substance of the transaction that the lessee is paying rent, due primarily to the lessor, for its property, in which the stockholders have no direct ownership, though they are recipients of the payments. The Telegraph Company does not pay the stockholders in lessor corporation dividends as such, because these must issue out of lessor’s corporate assets and be declared dividends by the lessor’s agencies. It does guarantee quarterly dividends by lessor in accordance with the terms of the lease. But the case is not different because of the use of the word dividends in the lease than it would be if the lessor had instructed the lessee to pay the rents as they accrue to stockholders. The designated agencies having received them, they are, in effect, received by the lessor itself. Plaintiff’s brief frankly admits that its contention has been decided adversely to it in two “ war-time ” decisions by two Circuit Courts of Appeals, citing West End St. Ry. v. Malley, 246 Fed. 625; Rensselaer & Saratoga R. R. Co. v. Irwin, 249 Fed. 726. We think the controlling principle has been decided by other courts as well. See Blalock v. Georgia Co., supra; Houston Belt & Terminal Co. v. United States, 250 Fed. 1; Northern Railroad Co. of New Jersey v. Lowe, 250 Fed. 856. The result is that the petition should be dismissed. And it is so ordered.
Graham, Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.