## UNITED STATES v. WESTERN UNION TELEGRAPH CO. et al.

District Court, S. D. New York. December 24, 1926.

**1. Internal revenue ⊶7(3)—Payments of lessee telegraph company to stockholders of lessor company held to constitute "taxable income" of lessor company.**

Where one telegraph company leased all lines and property of another for 99 years, agreeing to make payments for use and occupation thereof direct to stockholders of lessor company, payments thereunder *held* to constitute "taxable income" of lessor company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

**2. Internal revenue ⊶26—Right of stockholders of lessor telegraph company to payments from lessee held not property of lessor, authorizing government lien thereon for its income taxes (Rev. St. §§ 3185, 3186, 3467 [Comp. St. §§ 5907, 5908, 6373]).**

Where one telegraph company leased all lines and property of another, agreeing to make payments direct to stockholders of lessor, stockholders' right to payments *held* not property of lessor company, authorizing government lien thereon for income taxes due from such company, either under Rev. St. § 3186, or section 3467 (Comp. St. §§ 5908, 6373), in view of section 3185 (Comp. St. § 5907).

**3. Internal revenue ⊶26—As regards lien for income taxes on lessor's property, lessor cannot insist that lessee discontinue payments to lessor's stockholders.**

Where one telegraph company leased all lines and property of another for 99 years, agreeing to make payments for use and occupation thereof direct to stockholders of lessor company, lessor cannot insist that lessee discontinue payments, without consent of lessee and lessor's stockholders, as regards right of government to lien on lessor's property for income taxes due from lessor.

**4. Internal revenue ⊶28(4)—Government cannot resort to equity to enforce payment of income taxes by levy on moneys due under leasing agreement (Rev. St. §§ 3186, 3187, 3209 [Comp. St. §§ 5908, 5909, 5931]).**

Government cannot resort to equity to enforce payment of telegraph company's income taxes, by levying on all moneys and debts due it from another company under a leasing agreement requiring payment of rentals to stockholders, in view of adequate remedy to distrain and sell property, under Rev. St. §§ 3186, 3187, 3209 (Comp. St. §§ 5908, 5909, 5931); rule as to real property being inapplicable.

In Equity. Suit by the United States against the Western Union Telegraph Company and another. Bill dismissed.

Emory R. Buckner and Sherwood E. Hall, both of New York City, for the United States.

Francis R. Stark and Overton Harris, both of New York City, for Western Union Telegraph Co.

Moore & Bell, of New York City, and Shipman & Goodwin and Brosmith, Dickinson & Brosmith, all of Hartford, Conn., for Northwestern Telegraph Co.

BONDY, District Judge. This suit was brought to enforce payment by the Western Union Telegraph Company of taxes on the income of the Northwestern Telegraph Company for the years 1917 to 1922, inclusive, under the following circumstances:

On May 7, 1881, the Northwestern Telegraph Company leased all its telegraph lines and other property for a term of 99 years to the Western Union Telegraph Company, and the Western Union Telegraph Company promised the Northwestern Telegraph Company to pay for the use and occupation of such property certain specified sums of money annually, in semiannual payments, direct to the individual stockholders of the Northwestern Telegraph Company, at a specified rate on each share of stock of the Northwestern Telegraph Company. The Western Union Telegraph Company also agreed, whenever requested by the holder of any stock, to indorse upon the certificate of stock

an agreement to pay such proportion of such annual sum as belongs to the amount of stock contained in such certificate, all such payments to be so far a discharge of the obligations assumed by the agreement.

On the face of the stock certificates are the statements that the Northwestern Telegraph Company's dividends are guaranteed by the Western Union Telegraph Company, and that the stock is entitled to dividends under the provisions of the agreement, running 99 years, payable semiannually at the office of the Western Union Telegraph Company, and that all such payments are guaranteed by the Western Union Telegraph Company as by indorsement. The Western Union Telegraph Company also indorsed on the outstanding certificates the statement that in accordance with the agreement the Western Union Telegraph Company will pay to the owner and holder of the certificates the dividends therein described, at the time and place therein stated, during the period the contract shall continue in force.

On December 15, and again on December 31, 1921, the collector of internal revenue for the Second district of New York served on the Western Union Telegraph Company notice of the filing of a lien for the unpaid corporation income taxes due from the Northwestern Telegraph Company, in the office of the clerk of the District Court for the Southern District of New York, and warrants for distraint covering said taxes, penalties, and interest owing by the Northwestern Telegraph Company to the United States, and he levied on all moneys and debts due to the Northwestern Telegraph Company from the Western Union Telegraph Company.

[1] It is too well established to be questioned that all the payments made and to be made by the Western Union Telegraph Company to the stockholders of the Northwestern Telegraph Company under the foregoing agreements must be held to constitute taxable income of the Northwestern Telegraph Company. Rensselaer & S. R. Co. v. Irwin (C. C. A.) 249 F. 726, certiorari denied 246 U. S. 671, 38 S. Ct. 424, 62 L. Ed. 931; Northern R. Co. of New Jersey v. Lowe (C. C. A.) 250 F. 856. See also, Houston Belt & Terminal Ry. Co. v. United States (C. C. A.) 250 F. 1; Hamilton v. Kentucky & I. Terminal Ry. Co. (C. C. A.) 289 F. 20; American Telegraph & Cable Co. v. United States, 61 Ct. Cl. 326, certiorari denied April, 1926, 271 U. S. 660, 46 S. Ct. 473, 70 L. Ed. 1137; West End Street Ry. Co. v. Malley (C. C. A.) 246 F. 625, certiorari denied 246 U. S. 671, 38 S. Ct. 423, 62 L. Ed. 931.

[2] The government, relying on sections 3184, 3186, 3187, 3209, and 3467 of the Revised Statutes (Comp. St. §§ 5906, 5908, 5909, 5931, 6373), contends that, the prescribed notice having been filed and served on the Western Union Telegraph Company, the United States acquired a lien on all moneys then held and at all times thereafter to be held by the Western Union Telegraph Company for the account of the Northwestern Company under the agreements, and that the government, therefore, is entitled to have a lien declared upon the same as against both defendant companies and the stockholders of the Northwestern Telegraph Company, and to have an injunction issue against the payment of any moneys to any stockholders of the Northwestern Telegraph Company until the claims asserted by the government in these proceedings shall have been fully discharged.

The Western Union Telegraph Company promised not only the Northwestern Telegraph Company, but also the stockholders of the Northwestern Telegraph Company, to make payment for the use and occupation of the property to the stockholders of the Northwestern Telegraph Company. The Western Union Telegraph Company complied with those agreements and made payments direct to stockholders before and after the income tax law was enacted. Had it done otherwise, it would have violated those agreements.

[3] The Northwestern Telegraph Company never could have insisted, and cannot now insist, that the Western Union Telegraph Company should discontinue paying the rental to the stockholders, without the consent of the Western Union Telegraph Company and of the stockholders of the Northwestern Telegraph Company. See Bowers v. Interborough Rapid Transit Co., 121 Misc. Rep. 250, 201 N. Y. S. 198, affirmed 208 App. Div. 768, 202 N. Y. S. 917; Nina H. Peabody v. Interborough Rapid Transit Co., 124 Misc. Rep. 801, 209 N. Y. S. 376, affirmed 213 App. Div. 857, 209 N. Y. S. 893, 240 N. Y. 708, 148 N. E. 768; Gifford v. Corrigan, 117 N. Y. 257, 22 N. E. 756, 6 L. R. A. 610, 15 Am. St. Rep. 508; Seaver v. Ransom, 224 N. Y. 233, 236, 120 N. E. 639, 2 A. L. R. 1187; 13 C. J. 602.

It therefore does not appear how the rights of the stockholders of the Northwestern Telegraph Company to the payments under the agreements can be held to constitute property belonging to the Northwestern Telegraph Company, nor how the government can obtain a lien on the right of the stock-

holders, under section 3186 of the Revised Statutes, which provides that, if any person liable to pay any taxes neglects to pay the same after demand, the amount shall be a lien in favor of the United States until paid upon all property and rights to property belonging to such person. The right to the payments did not constitute any right or property belonging to the Northwestern Telegraph Company, within the meaning of this section.

Nor does it appear how the United States government can obtain any right against the Western Union Telegraph Company under section 3467 of the Revised Statutes, which provides that any person who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays debts due the United States from such person or estate, shall become answerable in his own person and estate for the debts so due the United States, or for so much thereof as remains due and unpaid; its obligation being to make the payments to the stockholders individually and not to the Northwestern Telegraph Company.

[4] The acts of Congress provide adequate means to enforce the payment of the taxes without resorting to a court of equity. Sections 3187 and 3188 of the Revised Statutes (Comp. St. §§ 5909, 5910) provide that it shall be lawful for the collector to collect taxes by the distraint and the sale of the property of the person neglecting to pay taxes and of all property on which a lien exists for the payment of taxes, and section 3209 provides that, if there is not in the district in which the delinquent resides sufficient property, subject to seizure or distraint, from which the money due for taxes can be collected, the collector of the district in which he shall have property liable to be seized and sold for the taxes, upon receipt of a properly certified statement, may proceed to collect the taxes in the same way as if the name of the person and the object of the taxes contained in such statement were on any list in his own collection district.

Although the statutes expressly provide for proceedings in equity to enforce a lien of the United States for taxes on real estate, or to subject real property, owned by the delinquent or in which he has any right, title, or interest, to the payment of the taxes, they do not provide for proceedings in equity to enforce liens on personal property. The statutory remedy to distrain and sell such property is adequate. A suit in equity to enforce a lien on personal property is not necessary and cannot be resorted to, in the absence of statutory authority.

No relief is sought against the stockholders. They were made parties to the suit only because their interests may be affected by a determination thereof. There was not any debt due from the Western Union Telegraph Company to the Northwestern Telegraph Company at the time of the filing of the notice of the lien, nor at any other time. There, therefore, were no rights to property belonging to the Northwestern Telegraph Company on which a lien for a claim against the Northwestern Telegraph Company has been or can be imposed.

It may be noted that, if the Western Union Telegraph Company is liable to the United States government on the theory contended for by the government, then every debtor who makes a payment to a creditor owing taxes to the United States may be called upon to pay those taxes, provided a notice of lien has been filed. See Revised Statutes, § 3185 (Comp. St. § 5907).

The bill, therefore, must be dismissed.