## BOSTON & M. R. R. v. UNITED STATES.

District Court, D. Massachusetts. December 20, 1927.

No. 2234.

1. **Internal revenue ⟨⟩28(1)—Difficulty of computation of income is no legal hindrance to collection of tax thereon.**

That computation of income is difficult is not a legal hindrance to the collection of a tax thereon.

2. **Internal revenue ⟨⟩7(3)—Lessee railroad's payment of lessor railroad's "income" tax under lease did not subject lessor to further tax on sum paid.**

Lessee railroad's payment of lessor railroad's federal income tax under lease which provided for payment of all taxes by lessee railroad, did not subject lessor to further tax on sum of money so paid, since there was no gain to lessor from transaction; "income" being gain derived from capital, from labor, or from both combined, provided that it be understood to include profit gained through sale or conversion of capital assets.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

3. **Internal revenue ⟨⟩7(3)—Where lessee paid lessor's income tax, taxing lessor for sum paid as income held obnoxious to rule regarding incidence of tax.**

Where lessee railroad company paid lessor railroad's federal income tax under lease providing for payment of all taxes by lessee, subjecting lessor to further tax on sum of money so paid as income *held* obnoxious to rule that incidence of tax should not be considered in levying tax.

At Law. Action by the Boston & Maine Railroad against the United States. Judgment for plaintiff.

Thornton Alexander, of Boston, Mass., for plaintiff.

J. M. Leinenkugee, Sp. Asst. U. S. Atty., of Washington, D. C.

LOWELL, District Judge. This case was selected from several other similar ones to test the question whether the payment of the federal income tax under a lease which provided for the payment of all taxes by the lessee subjects the lessor to a further tax on the sum of money so paid.

The case was tried on a stipulation of facts, which was essentially a restatement of the plaintiff's declaration. The following statement is taken almost verbatim from that declaration:

On June 30, 1900, the Fitchburg Railroad leased for the term of ninety-nine years all its railroad and property of every description to the Boston & Maine Railroad.

The lessee covenanted to pay all operating expenses of the lessor, including therein all repairs and renewals, all expenditures arising out of any contract, obligation, business, neglect, or misfeasance, or however otherwise arising, in any way connected with the ownership, use or operation of the demised premises, etc., including therein damages to persons or property, insurance, all taxes of every description, federal, state and municipal, upon the lessor's property, business, indebtedness, income, franchises, or capital stock, or said rental, all expenses consequent upon or incidental to the renewal or refunding of the lessor's indebtedness or that of any road owned, leased, or operated by it, any expenditures hereinafter declared to be operating expenses, all necessary legal expenses of the lessor, and the organization expenses of the lessor.

The lessee further covenanted to pay, as the same became due, the rentals of all railroads of which it came into possession or which it should operate under and by virtue of the lease and to pay the interest on the indebtedness of the lessor and on the indebtedness of all roads leased or operated by the lessor, which lessor was under obligation to pay, etc.

As rental for said lease, the lessee agreed to pay on the 1st day of October, 1900, and on the 1st days of each subsequent January, April, July, and October during the term of the lease, to each holder of the lessor's preferred stock, exclusive of any in the lessor's treasury, $1.25 for every share held by him, and to each holder of the lessor's common stock, exclusive of any in the lessor's treasury, 25 cents for every share held by him, and, in case of any failure so to pay, each shareholder was to have a separate right of action against the lessee for the amount due to him. The lessee also provided the lessor with office accommodations, and paid $7,000 a year to defray its "organization expenses."

For the calendar year 1917, the said Fitchburg Railroad Company was assessed income, war profits and excess profits taxes under the Revenue Acts of 1916 and 1917 upon its income for the said calendar year, amounting to $61,422.06, and in 1918 the said taxes were paid by its lessee, the Boston & Maine Railroad.

Thereafter, and on or about the 1st day of December, 1919, the Fitchburg Railroad Company was legally consolidated with the Boston & Maine Railroad, under and by virtue of the laws of the commonwealth of Massachusetts and of the states of Maine, New Hampshire, and New York.

On or about the 26th day of February, 1921, the Commissioner of Internal Revenue assessed an additional income tax upon the income of the Fitchburg Railroad Company for the calendar year 1917, amounting to the sum of $3,920.55; said assessment purporting to have been made under the Revenue Acts of 1916 and 1917 (39 Stat. 756, 40 Stat. 302) and further purporting to be taxes arising from inclusion by the Commissioner of Internal Revenue in the income of said Fitchburg Railroad Company for the calendar year 1917 of the amount of the taxes previously assessed for the calendar year 1917 upon said income and paid by said lessee, Boston & Maine Railroad, to wit, the amount of $61,422.06.

On or about the 20th day of July, 1921, the collector of internal revenue at Boston, Mass., demanded payment of said additional taxes amounting to $3,920.55 within the period of ten days from date thereof, under threat of the penalties provided by law.

The Boston & Maine Railroad paid the tax under protest, and filed a claim for refund, which the collector of internal revenue neither allowed nor rejected, and, after the lapse of six months, the present suit was brought.

If the government's contention is sound, the Treasury Department has discovered a manner of creating wealth—the age-long search for the philosopher's stone, which would turn into gold whatever it touched, has at last successfully ended. By merely laying the primary tax, the Department thereby creates income, which is subject to a secondary tax; this in turn is further income, which is subject to a tertiary tax; and this in its turn gives rise to a quaternary tax; and so on ad infinitum. This result is clearly shown in the opinion of Judge Morton in U. S. v. Norwich & W. R. Co. (D. C.) 16 F.(2d) 944,

where a similar situation was presented, but not decided, as the decision turned on another point. Judge Morton says:

"If the government's right to the tax here claimed be sustained, the sum paid for this tax will constitute additional income of the defendant; on that income an additional tax would be assessable; the additional tax, when paid, would constitute further income of the defendant, on which another tax would be assessable; and so on. Counsel agree that, to compute the tax with mathematical precision, resort must be had to calculus. It is said in argument that, on one of the cases which depend on this, the total amount of the tax, if computed according to the government's contention, will be over 200 per cent. of the entire income."

[1] An objection of some force to this form of taxation is that it requires for its computation a complicated algebraic formula. See U. S. v. Norwich & W. R. Co., ubi supra, Edwards v. Slocum (C. C. A.) 287 F. 651, 654, and Edwards v. Slocum, 264 U. S. 61, 63, 44 S. Ct. 293, 68 L. Ed. 564. But the government's answer to this contention seems sound —that, if this be income, difficulty of computation is not a legal hindrance to the collection of a tax thereon.

The plaintiff objects to the tax on the ground that the money used to pay it is not income, as it was never received by the Fitchburg Railroad. This contention is unsound. West End St. R. Co. v. Malley (C. C. A.) 246 F. 625; Rensselaer & S. R. Co. v. Irwin (C. C. A.) 249 F. 726; Houston Belt & Terminal Ry. Co. v. U. S. (C. C. A.) 250 F. 1; U. S. v. Western Union Tel. Co. (D. C.) 19 F.(2d) 157, and cases cited.

A more serious criticism is that the only source of income remaining to the Fitchburg Railroad is the rental paid by the Boston & Maine, and that an income tax, paid as it was in the case at bar, is not regarded as rent. Guild v. Sampson, 232 Mass. 509, 122 N. E. 712; Duffy v. Central R. Co., 268 U. S. 55, 63, 45 S. Ct. 429, 69 L. Ed. 846.

[2] The conclusive answer to the government's contention, however, seems to be that there is no gain to the Fitchburg Railroad from the transaction. Goodrich v. Edwards, 255 U. S. 527, 41 S. Ct. 390, 65 L. Ed. 758. See, also, Pitney v. Duffy (D. C.) 291 F. 621, and Duffy v. Pitney (C. C. A.) 2 F.(2d) 230.

" ' "Income may be defined as the gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a sale or conversion of capital assets.' Eisner v. Macomber, 252 U. S. 189, 207 [40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570]." Clarke, J., in Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 518, 41 S. Ct. 386, 388 (65 L. Ed. 751, 15 A. L. R. 1305).

The Fitchburg Railroad gets no gain or profit. It is not made richer by the tax so paid. Its financial situation is the same as when no income tax is laid, and continues the same however high the rate of such taxation may become. The opinion in the Appeal of the Providence & Worcester R. Co., 5 B. T. A. 1186, which decided a question like the present one in favor of the government, loses sight of this fact.

[3] The tax in the present case is also obnoxious to the cardinal rule that the incidence of a tax should not be considered in levying a tax. Edwards v. Slocum (C. C. A.) 287 F. 651, 655; Edwards v. Slocum, 264 U. S. 61, 63, 44 S. Ct. 293, 68 L. Ed. 564.

Judgment for plaintiff.