## TRAVELERS INS. CO. v. COMMISSION-ER OF INTERNAL REVENUE.
### No. 146, Docket 20376.

Circuit Court of Appeals, Second Circuit.
April 15, 1947.

94

Lillian L. Malley, of Hartford, Conn., for petitioner-appellant Travelers Ins. Co.

Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss and Helen Goodner, Sp Assts. to Atty. Gen., for respondent-appellee Commissioner of Internal Revenue.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayer, Travelers Insurance Company, prior to 1896 acquired 2,000 shares of the outstanding 50,000 shares of the capital stock of Northwestern Telegraph Company (hereinafter called "Northwestern") which it has since held continuously. Prior to July 1, 1881, the latter operated a telegraph business and on May 7, 1881, leased to the Western Union all of its assets and property for a term of 99 years. The annual rentals after the year 1896 were $150,000 per year. By the terms of the lease, Western Union agreed to pay the rentals specified in the lease directly to the stockholders and bondholders of Northwestern. After taking possession of the property, it placed on each certificate of Northwestern's stock an endorsement evidencing its obligation to pay dividends to the owner of the stock in the amounts provided in the lease. This endorsement was placed on the stock certificates owned by taxpayer.

In both 1940 and 1941 Western Union paid to the Northwestern stockholders the amounts provided by the lease. In each of those years the taxpayer, as owner of 2,000 shares of Northwestern stock, received the amount of $6,000 from Western Union—the payment representing six per cent of the par value of this stock.

For each of the years 1940 and 1941 Northwestern filed an income tax return, reporting an income tax of $36,012.24 due for 1940 and a tax of $46,265.81 due for 1941. The taxes were computed upon a gross income consisting of the payments made by Western Union to Northwestern stockholders in each year under the lease agreement. No part of the tax reported on these returns was paid. After the execution of the lease Northwestern was without property in its possession from which it could satisfy its liability for income taxes for 1940 and 1941.

On February 16, 1944, in a suit brought by the United States against Northwestern in the United States District Court for the District of Connecticut, judgment for delinquent federal income taxes and interest in the total amount of $286,445.49, plus $22.-20 costs, due from Northwestern for the years 1934 to 1941, inclusive, was entered in favor of the United States against Northwestern by the court. This judgment included the amounts of $36,012.24 and $46,-265.81 owed by Northwestern for the taxable years 1940 and 1941. The judgment was not appealed and has become final. Execution thereon was duly issued and returned unsatisfied and no part of the judgment has been paid.

On March 13, 1945, the Commissioner issued a deficiency letter to the taxpayer, in which he determined that the taxpayer was liable as a transferee for income taxes due from Northwestern for the years 1940 and 1941 to the extent of $6,000, plus interest thereon, for each year. From this determination taxpayer appealed to the Tax Court, contending only that prior decisions in United States v. Western Union Telegraph Co., D.C.S.D.N.Y., 19 F.2d 157, affirmed 2 Cir., 50 F.2d 102, and in United States v. Western Union Telegraph Co., D.C.S.D.N.Y., 52 F.Supp. 553 were res ju-

dicata of the taxpayer's transferee liability in this case.

The Tax Court held that the prior decisions relied on by the taxpayer were not res judicata as to its liability as a transferee. It therefore found that the taxpayer was liable as a transferee of assets for $6,000, plus interest, of the unpaid income tax of Northwestern for each of the years 1940 and 1941. From this decision, the taxpayer has petitioned for a review by this court. In our opinion the decision was right and should be affirmed.

In Commissioner v. Western Union Tel. Co., 2 Cir., 141 F.2d 774, certiorari denied 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581, we held, following United States v. Joliet, 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, that a lessor's stockholders to which rentals were to be paid directly under the terms of a lease were liable as transferees of the lessor for income taxes on the rentals because the rentals were transferred by the lessor in derogation of the rights of its creditors.

The question before us on this appeal is whether the Commissioner is estopped from asserting a liability of the petitioner, Travelers Insurance Company—a stockholder of Northwestern—for income taxes in the years 1940 and 1941, under the prior decisions in United States v. Western Union Telegraph Co., D.C., 19 F.2d 157, affirmed 2 Cir., 50 F.2d 102, and United States v. Western Union Telegraph Co., D.C., 52 F.Supp. 553. The statute and applicable Treasury Regulations are set forth below.[1]

In Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195, Justice Field distinguished between strict res judicata and collateral estoppel by judgment. A prior adjudication of a claim is a bar not only as to every ground of recovery actually present but as to every ground which might have been presented. The claim cannot

---

[1] Internal Revenue Code:
"§ 311. Transferred assets
"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):
"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. * * * Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.
* * * * * * * *
"(f) Definition of 'transferee'. As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee." 26 U.S.C.A. Int.Rev.Code, § 311.
"Treasury Regulations 103, promulgated under the Internal Revenue Code:
"Sec. 19.311-1. Claims in cases of transferred assets.—The amount for which a transferee of the property of a taxpayer is liable, at law or in equity, and the amount of the personal liability of a fiduciary under section 3467 of the Revised Statutes, as amended [31 U.S. C.A. § 192], in respect of any income tax imposed by chapter 1 (paragraph 81 of the Appendix to these regulations), whether shown on the return of the taxpayer or determined as a deficiency in the tax, shall be assessed against such transferee or such fiduciary, as the case may be, and collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by chapter 1, except as hereinafter provided. The provisions relating to delinquency in payment after notice and demand and the amount of interest attaching because of delinquency, the authorization of distraint and proceedings in court for collection, the prohibition of claims for abatement and claims and suits for refund, the filing of a petition with the Board of Tax Appeals, and the filing of a petition for review of the Board's decision, are included in the sections of the Internal Revenue Code (and regulations pertaining thereto) relating to deficiencies in tax imposed by chapter 1.
"The term 'transferee' as used in this section includes an heir, legatee, devisee, distributee of an estate of a deceased person, the shareholder of a dissolved corporation, the assignee or donee of an insolvent person, the successor of a corporation, a party to a reorganization as defined in section 112, and all other classes of distributees. * * * "

again be brought into litigation between the parties upon any ground whatever. In dealing with collateral estoppel Justice Filed said: "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

Justice Roberts applied the foregoing rules in Tait v. Western Maryland R. Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405. See also Southern Pacific R. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; New Orleans v. Citizens' Bank, 167 U.S. 371, 396-401, 17 S.Ct. 905, 42 L.Ed. 202.

Under the foregoing authorities the decisions in United States v. Western Union Telegraph Co., D.C. 19 F.2d 157, affirmed 2 Cir., 50 F.2d 102, and in United States v. Western Union Telegraph Co., D.C., 52 F.Supp. 553, did not operate as collateral estoppels by judgment. In neither was the question whether the stockholders of the lessor company were liable as transferees in any way involved. In the first case the issue decided was that the United States had acquired no lien under R.S. § 3186, 26 U.S.C.A. Int.Rev.Code, §§ 3670-3677, upon the annual payments of rent by Western Union to the shareholders of Northwestern. While it was stated in the opinion (at least in substance) that Northwestern had no "beneficial interest" in the rent paid to its stockholders by Western Union, that consideration was at most a mediate step in the court's reasoning which was unnecessary to support the decision and afforded no basis for an estoppel by judgment. The Evergreens v. Nu-

nan, 2 Cir., 141 F.2d 927, 152 A.L.R. 1187. In United States v. Western Union Telegraph Co., D.C., 52 F.Supp. 553, the question of the liability of the shareholders of Northwestern as transferees was not raised or referred to. The United States there attempted to impound the current rentals payable by Western Union in order to satisfy income tax claims due by. Northwestern and the court denied such relief because it held that the rentals were not the property of Northwestern. Travelers Insurance Company was a party to the proceeding but the complaint did not ask for any payment by it, nor assert any liability by it as transferee. Judge Hulbert did say in United States v. Western Union Telegraph Co., D.C., 52 F.Supp. 553, that the opinion of Judge Manton in United States v. Western Union Telegraph Co., 2 Cir., 50 F.2d 102, indicated that the government could not levy upon the rentals—even though they were taxable against the lessor—because they were not the latter's property. But the liability of the shareholders of Northwestern as transferees was not in issue and the decision that the rentals were not the property of Northwestern did not determine the absence of such a liability though it may have determined a "mediate fact" which, if correct, might tend to show an absence of liability on the part of the shareholders. In any event neither decision held that Northwestern did not "constructively receive" the rentals it had contracted to have paid directly to its stockholders, so as to render those stockholders liable as transferees for income taxes of Northwestern upon such rentals. "Constructive" ownership is a legal fiction; and a ruling that ownership relation did not exist as an actuality for one purpose, can hardly be thought to be determinative of the existence or non-existence of that ownership relation as a legal fiction for purposes of a statutory provision not involved in the earlier cases. Neither Judge Manton's decision in 2 Cir., 50 F.2d 102, nor Judge Hulbert's in D.C. 52 F.Supp. 553, denied that the rental money constituted taxable income of Northwestern. Accordingly neither of them can logically be thought to have ruled that Northwestern

never had "constructive" ownership of that rental money for purposes of determining the applicability of the transferee proviso in Section 311 of the Revenue Code.

The order of the Tax Court is affirmed.