EARL E. CLOUD and MARJORIE B. CLOUD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cloud v. Commissioner
Docket No. 1107-73.
United States Tax Court
T.C. Memo 1976-27; 1976 Tax Ct. Memo LEXIS 376; 35 T.C.M. (CCH) 95; T.C.M. (RIA) 760027; February 2, 1976, Filed *376 Petitioners were the 100 percent stockholders of a corporation which owned a motel. The corporation borrowed money and petitioners endorsed the note as guarantors. In 1967 petitioners, on their individual income tax return, deducted under sec. 163, I.R.C. 1954, amounts of interest personally paid on the loan of the corporation and deducted under sec. 164 real estate taxes paid with respect to property owned by the corporation. In a decision of this Court, Earl E. Cloud,T.C. Memo. 1974-131, we concluded that petitioners were not entitled to a deduction under sec. 163 for interest paid as the corporation was the primary obligor on the note, and were also entitled to no deduction under sec. 164 as the corporation was the owner of the property on which such taxes were paid. In 1968 and 1969, while petitioners were still 100 percent stockholders of the corporation, they claimed deductions for interest paid on the note of the corporation and for real estate taxes paid with respect to the property owned by the corporation. Respondent, by amendment to answer, affirmatively alleged the defense of collateral estoppel with respect to 1968 and 1969 *377 by virtue of our prior decision. In their response to respondent's amendment to answer petitioners alleged that such interest and real estate taxes were paid in order to protect petitioner's professional reputation as a practicing attorney. Held: Petitioners are not collaterally estopped by our prior decision from litigating the issue of payment of the corporation's obligation by petitioner to protect his professional reputation, thereby making such payments a business expense of his law practice. Such issue was not raised in the prior case. Commissioner v. Sunnen,333 U.S. 591 (1948). Held: Under the facts presented, petitioner has failed to show that he is entitled to deduct the interest and real estate tax payments as a business expense of his law practice. Earl E. Cloud, pro se. Roy S. Fischbeck, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1968 and 1969 in the amounts of $4,618.68 and $2,437.48, respectively. The issues for decision are: (1) Whether petitioners are collaterally estopped by the opinion and decision of this Court in Earl E. c/loud,T.C. Memo. 1974-131, involving the taxable year 1967, from litigating with respect to the taxable years 1968 and 1969 the issues of whether they are entitled to deduct payments they made in each of these years personally of interest due on a note on which their wholly owned corporation was the primary obligor and whether they are entitled in each of these years *379 to deduct payments they made personally of taxes on property owned by that corporation; (2) If petitioners are not collaterally estopped from litigating the issues of the deductibility of the interest payments they made on the corporate note and the tax payments they made on the corporate property, are they entitled to deduct the amounts so paid. FINDINGS OF FACT Petitioners, husband and wife, who resided in Huntsville, Alabama at the time of the filing of their petition in this case, filed joint Federal income tax returns on the cash basis of accounting for the calendar years 1968 and 1969 with the Internal Revenue Southeastern Service Center at Chamblee, Georgia. Earl E. Cloud (hereinafter referred to as petitioner) is a practicing attorney in Huntsville, Alabama and has been engaged in the practice of law in that city since 1950. Petitioners, with a third person, formed a corporation in 1962 under the laws of the State of Alabama, Barclay Motel, Inc. (Barclay). All of the stock, except one share, was acquired by petitioners and shortly after the issuing of the corporate charter by the Probate Court of Madison County, Alabama, petitioners acquired the one share of stock *380 in the name of the third party. From the time of the acquisition of all of the stock of Barclay by petitioners in 1962 until the corporation was dissolved in 1971, petitioners continued to be the sole stockholders of the corporation. The paid-in capital of Barclay was $2,000, and its capital stock consisted of 100 shares. The entire $2,000 was paid in by petitioners. Barclay was formed by petitioners to acquire a motel property. It did acquire a motel in Huntsville, Alabama and during its existence its principal business activity was the ownership and operation of that motel. During the entire existence of Barclay, Marjorie B. Cloud was its president and Earl E. Cloud was its secretary-treasurer. At the time Barclay acquired the motel property there was a mortgage on that property. Petitioners negotiated with the First National Bank of Huntsville, Alabama and the First American National Bank of Nashville, Tennessee for a loan to pay off the existing mortgage on the motel property. In April 1963 the First American National Bank of Nashville, Tennessee, with participation on the part of the First National Bank of Huntsville, Alabama, granted a loan to Barclay in the amount of $175,000 *381 to pay off the existing mortgage loan on the motel property which Barclay had acquired and to add an additional facility to the motel. Petitioners were guarantors of Barclay's note for the $175,000, which note was also secured by the corporate motel property. Twenty additional units were added to the motel and the original 25 units of the motel were upgraded with the proceeds of the loan. Petitioner did the negotiating for the construction of the additional units at the motel owned by Barclay and for the acquisition of the furnishings and appliances for the motel property. Shortly after completion of the additional 20 units at the motel, Barclay applied to the First American National Bank of Nashville, Tennessee and the First National Bank of Huntsville, Alabama for an additional loan for construction of a second addition to consist of 30 units and for operating funds to use during the period of this construction. A loan of $315,000 was made by the First American National Bank of Nashville, Tennessee to Barclay and the portion of the proceeds of this loan necessary to pay off the balance remaining due on the initial $175,000 loan was retained by the bank for that purpose. The $315,000 *382 loan was secured by a mortgage on the property of Barclay. The note given to the bank in evidence of this loan was dated August 24, 1964, and was signed "Barclay Motel, a corporation, by Marjorie B. Cloud, its president," and was attested by petitioner, its secretary-treasurer. This note was endorsed by petitioners personally. The mortgage was signed for Barclay Motel, Inc. by Marjorie B. Cloud as president and attested by petitioner as secretary-treasurer. During the taxable year 1968 petitioners personally paid to the First American National Bank of Nashville, Tennessee $7,061.29 of interest then due on the $315,000 promissory note of Barclay, and during the calendar year 1969 they personally paid $850 of interest to this bank on the note of Barclay. During the taxable year 1968 petitioners personally paid real estate taxes in the amount of $3,729.20 on the property owned by Barclay, and in 1969 personally paid taxes in the amount of $3,739.20 on property owned by Barclay. Barclay, in its Federal income tax return for its fiscal year ended February 28, 1970, claimed a deduction for the $3,739.20 of taxes which had been personally paid in 1969 by petitioners on its property. At *383 no time during the taxable years here in issue was any foreclosure action commenced on Barclay's property by the mortgagee, First American National Bank of Nashville. Barclay continued to own and operate the motel property until 1971 when petitioners acquired the property in the liquidation of Barclay and began to operate it as a sole proprietorship. Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1967 and petitioners filed a petition for a redetermination of that deficiency with this Court. The issue raised in that case was whether petitioners were entitled to an interest deduction under section 163, I.R.C. 1954, [1] for $1,500 paid by them personally with respect to the $315,000 note of Barclay which was secured by a mortgage on Barclay's property and whether they were entitled to deduct under section 164 real estate taxes on property owned by Barclay which petitioners personally paid in the amount of $3,739.20. On May 22, 1974, this Court filed its Memorandum Opinion in the 1967 case in which it concluded that petitioners were not entitled to the deductions claimed under section 163 and section 164 since the primary *384 obligor on the $315,000 note was the corporation, Barclay, and the property on which real estate taxes were paid was the property of Barclay. Petitioners in the instant case on their Federal income tax return for 1968 claimed an interest deduction of $13,307.19. A foootnote to the schedule listing the interest paid to the "First National Bank" and the "First American National Bank" contained the statement: "Some of this interest on note of which Barclay Motel, Inc., a corporation 100% owned by taxpayer is also liable." Petitioners on their 1968 return claimed a deduction for real estate taxes in the amount of $4,829.27 and in a footnote to this claimed deduction stated: "Includes 3,729.20 for Barclay Motel, Inc. of which taxpayer owns 100%." On their 1969 Federal income tax return petitioners claimed a deduction for interest in the amount of $5,001.54. With respect to the payment to the First National Bank in the amount of $2,052.68, petitioners stated in a footnote that "[some] of this may have been on debt of 100% owned corp.," and with respect to the payment of $781.25 *385 to the First American National Bank stated in a footnote: "On Corporation Indebtedness." Petitioners claimed a deduction in 1969 for taxes of $7,316.97 and with respect to $3,739.20 of the amount of taxes claimed had the explanation: "Ad Valorem Tax paid for 100% owned corporation." Respondent in his notice of deficiency dated November 22, 1972, disallowed $8,223.79 of petitioners' claimed deduction for interest expense in 1968 and $1,338.88 of the interest expense deduction claimed for 1969, stating: It has not been established that amounts in excess of $5,083.40 for the taxable year 1968 and $3,662.66 for the taxable year 1969 constitute allowable deductions or were expended for the purpose designated. It has not been established that payments made by you in the amounts of $1,417.60 during the taxable year 1968 and $511.50 during the taxable year 1969 constitute your expense rather than the expense of Barclay Motel, Inc. Accordingly, your taxable income is increased in the amount of $8,223.79 for the taxable year 1968 and $1,338.88 for the taxable year 1969. Respondent disallowed $3,729.20 of the deduction claimed by petitioners for taxes in 1968 and $3,739.20 of the amount *386 claimed by petitioners in 1969 with the explanation: Taxes paid by you on property belonging to another taxpayer, Barclay Motel, Inc. are not deductible by you. Accordingly, your taxable income is increased in the amount of $3,729.20 for the taxable year 1968 and $3,739.20 for the taxable year 1969. In their petition filed with this Court seeking a redetermination of their income taxes for 1968 and 1969 petitioners in their assignment of errors alleged that the interest was paid by petitioners on a promissory note on which they were co-makers and endorsers and that the real estate taxes were paid under provision and condition of real estate mortgage given by Barclay Motel, a corporation, with petitioners as comakers and endorsers from origination, Barclay Motel, a corporation, being unable to pay taxes due to insufficient funds, non-payment of taxes would have resulted in tax sale of property yielding of possession of property to tax sale purchaser, in effect minimizing or destroying security for original promissory note and real estate mortgage. In their facts petitioners alleged that Earl E. Cloud, * * * a practicing attorney with a general practice, the senior partner *387 of the firm, would suffer irreparable damage to his law practice and the practice of the firm, personally and financially, if the operating expenses, the interest on borrowed money and the ad valorem taxes were not paid as obligated, all of which was considered necessary and entitled to deductions. Petitioners, in order to avoid close down of operations and foreclosure, as well as sale for delinquent ad valorem taxes, paid on the liabilities and even went so far as to place a second mortgage against their personal residence as additional security for the repayment of money borrowed for operating expenses, interest and ad valorem taxes. The decision of this Court with respect to petitioners' 1967 Federal income tax was entered May 22, 1974. On September 9, 1974, no appeal having been taken from the decision entered by this Court with respect to petitioners' year 1967, respondent filed a Motion for Leave to File Amendment to Answer. The motion was granted and the amendment to answer affirmatively alleging the defense of collateral estoppel was filed on October 16, 1974. Petitioners filed a reply to this amendment to answer on February 3, 1975, in which they admitted the allegations *388 respecting the parties being the same in the case involving the year 1967 and the holding in that case and the entry of decision in that case, but denied the allegation in respondent's answer that the issues in the present case were the same as the issues presented, litigated, and determined in the case for 1967 and the allegation of respondent that the opinion and decision in the 1967 case are conclusive and binding on petitioners with respect to the issues in the instant case. OPINION Respondent in support of his argument that petitioners should be collaterally estopped from litigating the issues in the instant case relies primarily on Commissioner v. Sunnen,333 U.S. 591 (1948). In that case the Supreme Court stated with respect to collateral estoppel in a Federal income tax case, at 597-601: But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated *389 and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Cromwell v. County of Sac, supra, 353 of 94 U.S. And see Russell v. Place, 94 U.S. 606, 24 L.Ed. 214; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 27, 42 L.Ed. 355; Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 671, 64 S.Ct. 268, 273, 88 L.Ed. 376. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, resjudicata is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. See Restatement of the Law of Judgments, §§ 68, 69, 70; Scott, "Collateral Estoppel by Judgment," 56 Harv.L.Rev. 1. *390 These same concepts are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is resjudicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayer's status." Tait v. Western Md. R. Co., 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405. * * *
And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations *391 carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.Tait v. Western Md. R. Co., supra.If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation. See Travelers Ins. Co. v. Commissioner, 2 Cir., 161 F.2d 93. * * * Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. See Evergreens v. Nunan, 2 Cir., 141 F.2d 927. And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. * * * Before *392 a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment. * * * [Emphasis supplied.] Respondent contends that under these principles we should hold for him with respect to collateral estoppel. In our view the mere quotation of the rule governing collateral estoppel in Federal tax cases as set forth by the Supreme Court points out the invalidity of respondent's argument in the instant case. In the prior case petitioners' contention was that they were entitled to deduct interest they paid as interest under section 163 and taxes they paid as taxes under section 164. In our Memorandum Opinion in that case we pointed out that petitioners' obligation on the note was secondary and that the taxes were paid with respect to property owned by the corporation, Barclay, and not by petitioners personally. We then stated: We must agree with respondent's position. The obligations for interest and taxes here were those of Barclay and petitioners' liability was secondary. Nelson v. Commissioner,281 F. 2d 1 *393 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court; Acker v. Commissioner of Internal Revenue,258 F. 2d 568 (C.A. 6, 1958), affirming a Memorandum Opinion of this Court on this issue, cf., Putnam v. Commissioner of Internal Revenue,352 U.S. 82 (1956). We did follow this statement under the designation "II." with the following: At paragraph 5 F of their petition petitioners state that petitioner husband is a practicing attorney with a general practice and would suffer irreparable damage to such practice if these "operating" expenses here in issue were not paid. We have already held that the primary obligations in issue were those of Barclay. There is no evidence of default nor is there any attempt by petitioners to equate themselves with Barclay by lifting the corporate veil, and consequently this argument makes no sense. The expenses for interest and taxes here in issue were taken by petitioners' wholly owned corporation in its income tax return. They are properly deductible there and no place else. We can only look upon petitioners' attempt for double deductions as just that, and respondent's action in disallowing such deductions *394 is sustained. Even a liberal interpretation of petitioners' contentions discussed under "II" in our prior decision does not support the conclusion that petitioners were contending that the interest and taxes paid by them on the indebtedness and property of Barclay were deductible as a business expense of petitioner's law practice. The determination of such an issue must be based on the facts present in the particular year involved. In our view petitioners did not raise the issue of the necessity of petitioner's payment of the interest and tax expense of Barclay to protect his legal practice in the case for 1967 and respondent does not contend he did but rather contends that in this case petitioner has raised only the issue of deduction of the interest and taxes under sections 163 and 164. In our view, under the holding in the Sunnen case petitioners are not estopped as to the years 1968 and 1969 from presenting the issue of whether they are entitled to deduct the amounts which they paid as interest and taxes with respect to the note and property of their 100 percent owned corporation as expenses of petitioner's law practice. Petitioners would be estopped from presenting the *395 issue of whether they are entitled to deduct the amounts paid as interest and taxes under sections 163 and 164 since this issue was litigated in the case for 1967 and decided adversely to petitioners' position. However, petitioners' contention in the instant case is not that they are entitled to deduct these amounts as interest and taxes. In fact, the opening sentence in petitioners' argument in their brief is that "[the] Petitioners contend they are entitled to the deductions claimed on their respective Returns for the taxable years December 31, 1968 and December 31, 1969, because they were expenditures made in the course of business and should be classified as business expense deductions." Petitioners then proceed to argue that these expenditures were necessary to protect petitioner's practice as a lawyer and cite only cases dealing with a taxpayer's right to deduct as an expense of his personal business expenses or debts paid for a corporation of which he was a stockholder. They point out that the First National Bank of Huntsville was located in the same city in which petitioner practiced law. Also at the trial petitioner made his position that he was claiming the payments as *396 an expense of his law practice clear. At the trial respondent did not contend that petitioners' pleadings did not properly raise this issue. In our view the issue as to petitioner's right to deduct the interest and taxes he paid for Barclay as an expense of his law practice is properly before us and is the only issue before us. Even though we agree with petitioner that he is not estopped to raise the issue of whether he is entitled to deduct the interest and tax payments as business expenses of his law practice, we do not agree that on the basis of the record in this case he has shown that he is entitled to the claimed deductions. The only evidence which petitioners offered on direct examination with respect to the necessity of making these payments was petitioner's testimony that "in order to avoid embarrassment and foreclosure proceedings * * * petitioner was required to pay as much as possible on the indebtedness, * * * since banking was done with First National Bank solely, the officers who participated in the loan new (sic) the financial condition of Barclay Motel and the petitioners from the beginning throughout the entire time and as further evidence of the fact, in trying *397 to avoid foreclosure, in February of this year [referring to the year 1975], the foreclosure suit was filed and it has been marked as an exhibit for the petitioners in this case, naming the petitioners as two of the defendants in the case." Petitioner, on cross-examination, stated: I had to make the payments. I'm -- I practiced there in the city, I had no alternative but to try to keep up my reputation. It would have been damaging to me then as it was damaging in February of this year for it to be on the docket here in Birmingham, and it came up three or four times between February and July about -- before the foreclosure. It was. It still is. It's still a grievous situation. * * * These conclusionary statements on the part of petitioner are far too sketchy to constitute a showing of the necessary relationship between his legal practice and the payment of interest and taxes for Barclay sufficient to entitle petitioner to deduct the payments as a business expense of his law practice. There is no showing in this record who petitioner's clients were or what effect petitioner's failure to pay interest and taxes due by Barclay would have had on their seeking petitioner's services *398 as a lawyer. In fact, this record totally fails to show that petitioner's failure to pay these amounts would have resulted, in the years here in issue, in the commencement of foreclosure proceedings or would have brought even any embarrassment to petitioner. It falls far short of showing that the payments were so proximately related to petitioner's trade or business as to cause the amounts to be deductible by petitioner as business expenses in his practice of law. The cases such as Samuel R. Milbank,51 T.C. 805 (1969), on which petitioner relies present a totally different factual situation from that presented in the instant case. In that case the clear relationship between the necessity for the payment of the amount which we held to result in a business bad debt and petitioner's business was shown. Here, there is not only a failure to show the necessity for petitioner to pay the amount to protect his law practice but there is not even a showing that the amounts paid by petitioner on behalf of Barclay were not considered by Barclay and petitioner as a debt owing to petitioner. As far as this record shows, had the operation of the motel by Barclay become successful *399 petitioner anticipated being repaid for the amounts he advanced for interest and tax payments. Viewing the payments by petitioner as loans to Barclay, there is no showing here that these loans had become worthless in the years here in issue. The other cases cited by petitioner, such as Allen v. Commissioner,283 F. 2d 785 (C.A. 7, 1960), reversing in part and affirming in part a Memorandum Opinion of this Court, are likewise totally distinguishable factually from the instant case. The Allen case held a number of items paid by the taxpayer therein not to be sufficiently related to the taxpayer's trade or business as to be deductible by him as business expenses, but did hold an amount paid by the taxpayer to the creditors of a Tucson corporation of which he was a stockholder and president when the corporation was in liquidation to be for the purpose of protecting his personal business reputation. The taxpayer in that case was in a business as a sole proprietor of selling mass-produced homes in Milwaukee and the corporation whose indebtedness he paid was engaged in a similar business in Tucson. The Court concluded, reversing this Court in that respect, that the *400 payment by the taxpayer of indebtednesses of the corporation when it was in liquidation was for the purpose of protecting his established business and, for that reason, the amount was deductible as an expense of his personal business. Here, no such showing has been made. The case of Grauman v. Commissioner,357 F. 2d 504 (C.A. 9, 1966), affirming a Memorandum Opinion of this Court, cited by petitioner, in no way supports his contention. In that case it was held that payments by a physician to creditors of his wholly owned corporation which was liquidated had not been shown to have been made for the purpose of protecting his professional reputation. In disposing of the taxpayer's contention, the Court stated, at 505: Taxpayer here seems to take the position that as a matter of law payment of debts of a wholly owned corporation should be allowed as an ordinary and necessary business expense by one engaged in the practice of a profession, since it is common knowledge that one's professional reputation is threatened when one fails to meet his moral obligations. We cannot agree that common knowledge would support such a broad legal principle. * * * These statements *401 are equally applicable to the instant case. On the basis of this record, we conclude that petitioner is not entitled to deduct the amounts he paid for interest and taxes for Barclay in the years 1968 and 1969. Since certain concessions were made by respondent, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code, as amended, unless otherwise stated.↩