MATTER OF C——

In DEPORTATION Proceedings

A-3415533

*Decided by Board February 29, 1960*

Subversive organization—Evidence of membership—Doctrine of collateral estoppel by judgment—Finding of membership in denaturalization proceedings held conclusive in subsequent deportation proceedings—Original entry as basis for deportation charge under section 241(a)(6) of 1952 act.

(1) Where one of the principal issues in a denaturalization suit was whether respondent had been a member of the Communist Party from 1930 to 1936 and this issue was litigated and was essential to the court's determination which resulted in a judgment revoking citizenship; *held*, under doctrine of collateral estoppel the finding by the court in the denaturalization suit was conclusive in the subsequent deportation proceeding involving charge based upon like period of membership in the Communist Party.

(2) Where respondent lawfully entered the United States for permanent residence in 1923, reentered illegally following a trip to Moscow in 1932, and last entered in 1945 as a member of the armed forces, deportability under section 241(a)(6) of the act as a member of the Communist Party after entry is established with relation to his 1923 entry. *Bonetti v. Rogers*, 356 U.S. 691, distinguished.

CHARGE:

Order: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry, member of Communist Party of United States.

BEFORE THE BOARD

Discussion: On April 6, 1959, a special inquiry officer directed the respondent's deportation. Upon his appeal, we entered an order on October 27, 1959, directing that the hearing be reopened and that the case be remanded to the Service. The matter is now before us on motion of the Service dated December 8, 1959, requesting reconsideration of our order of October 27, 1959.

The respondent is a 53-year-old male, native and last a citizen of Russia. He entered the United States on January 1, 1923, and apparently was lawfully admitted for permanent residence at that time. He departed for Moscow, U.S.S.R., in November 1932, and thereafter illegally reentered the United States. He also arrived in the United States on October 4, 1945, following service outside this coun-

577

try with the United States Army. His present marital status is not shown by the record. The special inquiry officer found that the respondent was a member of the Communist Party of the United States from about 1930 to about 1937, and in 1946. The issues raised by the motion are whether our previous order should be withdrawn and, if so, whether the respondent is deportable on the charge stated above. For the reasons hereinafter stated, we will grant the motion of the Service and dismiss the respondent's appeal from the order of deportation.

On May 14, 1943, while serving in the United States Army, the respondent was naturalized as a citizen of the United States under the provisions of section 701 of the Nationality Act of 1940, as amended [56 Stat. 182; 8 U.S.C. 1001, 1940 ed. Supp.]. His naturalization was revoked on June 27, 1956, by a decree of the United States District Court for the District of Maryland (Exh. 2). The respondent filed an appeal from that decision in the United States Court of Appeals for the Fourth Circuit but this was dismissed on September 19, 1958, upon agreement between the parties (Exh. 3). In addition, the Government introduced a copy of the court's opinion in the denaturalization proceeding (Exh. 4) which will also be found in the case entitled *United States* v. *Chandler*, 152 F. Supp. 169. On the basis of the findings of fact in that opinion, the special inquiry officer held that the respondent's deportability had been established under the doctrine of collateral estoppel by judgment.

When we previously reviewed the record, we observed that the respondent had said that he supposed he would answer questions and that he had not been asked thereafter whether he had been a member of the Communist Party. Accordingly, we directed that the hearing be reopened to permit the respondent and the Government to present any pertinent evidence. In its motion, the Service takes the position that it met its burden of proof when exhibits 2 to 4, inclusive, pertaining to the denaturalization proceedings, were received in evidence and that it was under no obligation to specifically question the respondent concerning his Communist Party membership.

Counsel has urged that this Board should not entertain the motion of the Service and complains that the procedure followed in this case was unfair because the Service received notice of our decision before he did. He also contends that the time within which he might reply to the Service motion should have been fixed by us rather than by the Service.

8 CFR 3.8 is the pertinent regulation concerning motions to the Board for reopening or reconsideration. Subsection (c) thereof, relating to cases where the Service is the moving party, provides that it shall cause one copy to be served upon the alien. The time for filing a reply in the respondent's case was not fixed by the Serv-

ice, but the regulation itself provides that the alien shall have a period of 10 days from the date of service upon him of the motion within which to submit a brief in opposition to the motion, and that the Board, in its discretion, may extend the time within which such brief may be submitted. The regulations do not specify any time limitation upon the filing of a motion for reconsideration by the Service or by counsel. In this case, counsel states that he received the Service motion one day after he received our order of October 27, 1959. Hence, counsel was not misled into believing that the Service acquiesced in our order.

The procedure followed here complied with the regulations. Counsel did not request any extension of the period within which he might reply to the motion of the Service and there is nothing in his reply brief which would indicate that he desires an extension of time to answer more fully the motion of the Service. He also has not contended that the respondent was prejudiced in any manner by the fact that counsel received our order and a copy of the Service motion at about the same time. Under the circumstances, we reject counsel's contention that the motion of the Service for reconsideration should not be entertained.

Although counsel urged that the Board should not entertain the motion of the Service, he did not press for reopening of the hearing nor indicate that the respondent desired to testify. Since it is clear that the Service wishes to have the matter adjudicated on the present record and inasmuch as we now believe that no useful purpose would be served in reopening the hearing, we will grant the motion for reconsideration, withdraw our previous order, and proceed to a determination of the question of whether the respondent is deportable on the charge stated in the order to show cause.

Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit between the same parties on the same cause of action. Where the parties are the same but the causes of action are different, the doctrine of collateral estoppel by judgment precludes relitigation in the second suit of issues actually litigated and determined in the prior suit. The special inquiry officer recognized this distinction and both parties before us are agreed that this case is to be determined under the applicable principles pertaining to the doctrine of collateral estoppel. On the basis of this doctrine, the Service asserts that deportability has been established while counsel's contention is to the contrary.

Counsel contends that the judgment in the denaturalization suit rests on alternative findings and that no estoppel is created in such cases. He asserts that the decision rested on four alternative grounds but does not state what he considers these to be. He does state that the respondent could not test, on appeal, the court's finding concern-

ing nonattachment to the principles of the Constitution "because the judgment was clearly sustainable on one of the alternate holdings—misrepresentation of the arrest record." Before discussing the effect of a judgment resting on alternative grounds, two preliminary observations are pertinent.

In the first place, there is considerable question whether the judgment in the respondent's case would have been *clearly sustainable* on the basis of the concealment of the arrest record. This is so because the court did not even make a definite finding as to the materiality of the arrests.

Secondly, counsel says it is necessary that alternative findings should not create estoppels because otherwise findings would become conclusive although they were not capable of being appealed, and he contends that this respondent could not appeal from the adverse finding. In this connection, he referred us to the footnotes on pages 99 and 109 of *Partmar Corporation* v. *Paramount Pictures Theatres Corporation*, 347 U.S. 89 (1954), and to *Gelpi* v. *Tugwell*, 123 F.2d 377 (C.C.A. 1, 1941). The footnote on page 109 of the *Partmar* case is in the dissenting opinion and may be disregarded. In the footnote on page 99, it was stated that Partmar (for whom judgment was entered) did not appeal but could have done so, and there is the specific statement: "It is only when a finding of law or fact *is not necessary* for a decree that the *prevailing party* may not appeal and the finding does not form the basis for collateral estoppel" (emphasis supplied). Obviously, this case does not help the respondent. In the *Gelpi* case, the appeal was dismissed as moot but the court stated that, since the appellant was prevented from obtaining a review of the judgment through no fault on her part, the judgment would not become *res judicata* on the issues involved in any subsequent litigation upon a different cause of action.

The foregoing two cases were the only ones cited by counsel for his theory that the respondent could not appeal from the adverse finding. That the rule is otherwise is shown by the decisions in *Galloway* v. *General Motors Acceptance Corporation*, 106 F.2d 466, 467 (C.C.A. 4, 1939), and *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946). In the first case, it was stated that the general rule is that one may not appeal from a verdict in his favor or from that portion of a decision which is favorable but he may secure a review of that portion of a decision which is adverse. In the *Fishgold* case, a union which had a collective bargaining agreement with Sullivan was permitted to intervene. The District Court entered a money judgment for the petitioner. Only the union appealed. The Supreme Court held that the union had an appealable interest because there had been a construction of the collective bargaining agreement which had resulted in an adjudication adverse

to the union. Accordingly, the judicial authority is contrary to counsel's position that the respondent could not appeal from the adverse finding that he was a member of the Communist Party. As a matter of fact, the respondent did appeal although the appeal was subsequently dismissed by agreement of the parties.

We turn now to the contention itself which is that no estoppel is created where the judgment rests on alternative findings. One matter which counsel offered in support was his quotation of a single sentence appearing on page 307 of the decision in *Fayerweather* v. *Ritch*, 195 U.S. 276 (1904). The sentence is as follows: "And where the evidence is that testimony was offered at the prior trial upon several distinct issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues, and the plea of *res judicata* must fail." Immediately preceding this sentence, there was a statement to the effect that, when the pleadings are general, evidence may be given concerning the testimony which was introduced on the trial since that may disclose what must have been considered and determined. The judgment in the first suit contained no findings to indicate upon what it was based, and the case is not analogous to that of the respondent in which the court made specific findings. When the statement quoted by counsel is considered in context, it is clear that it relates only to a case in which there were no findings and in which it was necessary to produce evidence as to what testimony was introduced at the original trial. The Supreme Court's conclusion was that although there was not even a specific finding in the first suit, the decision there had necessarily determined that certain releases were valid and the point could not be relitigated in the second suit. Hence, we believe that this decision does not support counsel's contention but actually is opposed to his claim that the question concerning the respondent's Communist Party membership can be relitigated.

Counsel also cited six decisions of state courts which are supposed to hold that alternative findings do not create an estoppel. An examination of these shows that in one case the former judgment was based on laches and not upon the merits; in another case the jury was not authorized to render a verdict finding both sides negligent; and in three cases the attempt was to claim as an estoppel a fact found in the first suit which was immaterial to that decision. The remaining case cited by counsel was *Burlen* v. *Shannon*, 99 Mass. 200 (1868). There, Mrs. Shannon had previously filed a libel for divorce *a mensa* against Mr. Shannon. There was a general verdict in his favor, and it was impossible to determine whether this was because his wife had failed to prove her charges of misconduct or whether it was because his divorce from her, previously obtained in

Indiana, was valid. A third party subsequently sued Mr. Shannon for room and board furnished the wife, and it was held that the third party was not estopped from showing the invalidity of the Indiana divorce. Not only did this case involve an attempt to set up the estoppel against one who was not even a party to the prior suit, but it is merely another illustration of the well-settled rule that estoppel does not arise unless the particular finding was necessary to the decision in the first suit. For the reasons indicated, we do not consider that the cases cited by counsel support his contention. On the other hand, the authorities mentioned below show that the rule is not as he claims.

Where a decision is rested on two grounds, the ruling on neither is *obiter* but each is the judgment of the court and of equal validity with the other. *United States* v. *Title Insurance & Trust Company,* 265 U.S. 472, 486 (1924) ; *Union Pacific Railroad Company* v. *Mason City and Fort Dodge Railroad Company,* 199 U.S. 160, 166 (1905) ; *Railroad Companies* v. *Schutte,* 103 U.S. 118, 143 (1880) ; *The Choctaw Nation* v. *United States,* 135 F. Supp. 536 (Court of Claims, 1955), cert. den. 352 U.S. 825.

In the last mentioned case, there was involved the Choctaws' claim to ownership of land lying west of the 100th meridian. There had been a prior court decision against them in a case which did not involve this land but which related only to land lying east of the 100th meridian. However, in the earlier case the Choctaws had used as an argument a claim that they owned the land west of the 100th meridian but the court in that case found to the contrary and this was held *res judicata* in the second suit. (Since the cause of action was not the same in the second suit, there was actually involved the doctrine of collateral estoppel by judgment.)

In *Railroad Companies* v. *Schutte, supra,* the Supreme Court said (p. 143) :

It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued and elaborately considered in the opinion. The decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended.

In *Irving Nat. Bank* v. *Law,* 10 F.2d 721 (C.C.A. 2, 1926), it was stated at page 724: "* * * if a court decides a case on two grounds, each is a good estoppel." The following rule is set forth in Restatement of the Law of Judgments, section 68, comment "n": "Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment." Accordingly, we reject this contention of counsel.

Counsel is correct in his statement that under the doctrine of collateral estoppel the point or question to be determined in the second action must be the same as that litigated in the original action and that it must have been a fact which was essential to the first decision (*Tait* v. *Western Maryland Railway Co.*, 289 U.S. 620, 623 (1933); *Yates* v. *United States*, 354 U.S. 298 (1957)). In the last mentioned case, at page 336, the court said that the doctrine of collateral estoppel "makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision."

Counsel also asserts that a finding creates an estoppel only if it was a finding of the ultimate fact in issue. In connection with this contention, the Service stated its position as follows on page 8 of the memorandum which accompanied its motion: "In other words, that there is no distinction between ultimate facts and mediate data *so long as they were necessary to the result and were actually litigated;* that what is meant by 'evidentiary' facts must be those facts which were not litigated and not put in issue and did not in and of themselves effect the determination that was reached." We do not agree with this statement nor with the view of the Service concerning the analogy between the respondent's case and *Local 167, International Brotherhood of Teamsters, etc.* v. *United States*, 291 U.S. 293, 298–299 (1934). That case held only that the judgment in the prior criminal case conclusively established that those found guilty were parties to the conspiracy and those persons were estopped in the subsequent civil suit from denying participation in the conspiracy.

In support of this contention, counsel quoted the following which appears in Restatement of the Law of Judgments, 1948 Supplement, section 68, comment "p":

p. *Evidentiary facts.* The rules stated in this section are applicable to the determination of facts in issue, *i.e.,* those facts upon whose combined occurrence the law raises the duty or the right in question, but not to the determination of merely evidentiary or mediate facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary or mediate facts.

Comment "p" of section 68 of Restatement of the Law of Judgments employs the term "facts in issue" but does not use "ultimate facts" which is the term on which counsel relies. Similarly, *Travelers Insurance Co.* v. *Commissioner of Internal Revenue*, 161 F.2d 93 (C.C.A. 2, 1947), cert. den. 332 U.S. 766, and *Norton* v. *Larney*, 266 U.S. 511 (1925), cited by counsel, do not even refer to the term "ultimate facts." *Hyman* v. *Regenstein*, 258 F.2d 502 (C.A. 5, 1958), does mention ultimate facts but the decision there was predicated on the well-settled principle that a fact decided in an earlier suit is conclusively established between the parties in subsequent litigation provided it was necessary to the result in the first suit, and the court held against Hyman on four alleged frauds—three of them under

the doctrine of collateral estoppel. *The Evergreens* v. *Nunan*, 141 F.2d 927 (C.C.A. 2, 1944), cert. den. 323 U.S. 720, is of no assistance to counsel because the court specifically said (pp. 929–931) that the question involved was not the relative conclusiveness of mediate data and ultimate facts in the first suit, and the actual ruling was that no fact decided in the first suit, whether an ultimate fact or a mediate datum, conclusively establishes anything except a fact ultimate in the second suit.

In connection with this contention, counsel also cited *Yates* v. *United States, supra*. One of the defendants in that case was Schneiderman who claimed that the court had made determinations favorable to him in a denaturalization proceeding and that these were conclusive under the doctrine of collateral estoppel in a subsequent criminal proceeding. The court held that the prior determinations did not create an estoppel in the second proceeding because the issues were different and the first suit involved a period prior to 1927 whereas the second suit involved the period from 1948 to 1951. Schneiderman urged that, even if the prior determinations were not conclusive, they should be given partial conclusive effect but the court stated that the doctrine of collateral estoppel does not establish any such concept. It was in this connection that the court made the following statement at page 338: "The normal rule is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or 'mediate' facts are concerned, the doctrine of collateral estoppel is inoperative." Counsel quoted and relied on the second sentence. When considered in context, however, it is clear that it relates only to the facts in the subsequent proceeding and has nothing to do with the relative conclusiveness of mediate and ultimate facts in the first suit.

The remaining case cited by counsel in support of his contention is *King* v. *Chase*, 15 N.H. 9 (1844). In that case also there is no reference to "ultimate facts," although the case does illustrate a view of a few courts that "ultimate fact" should be defined as "final fact." However, the facts in the case were not as counsel stated them. The first suit was for taking away a large quantity of oats and the second suit was for taking 30 tons of hay and other articles. In the first suit, the finding that the plaintiff had no title to the oats must have been predicated on the opinion that the mortgage he held was fraudulent. The court concluded that the title to the property in the second suit had not been tried.

While only *King* v. *Chase, supra*, lends any support to counsel's contention that only ultimate facts found in the first suit become an estoppel in the second suit, there are judicial decisions to that effect. The matter is discussed in 142 A.L.R., pages 1243 to 1252,

inclusive. From what is there stated, it appears that the courts generally agree that the doctrine of collateral estoppel is confined to the ultimate facts in the first action and that it does not extend to evidentiary facts. However, difficulty arises in defining the meaning of ultimate fact, as distinguished from evidentiary fact, for the purposes of the rule. The question is discussed in the "Comment Note" in A.L.R. by considering ultimate fact under the concepts of: (1) a pleadable fact or fact in issue, (2) a material element of legal relationship in controversy, (3) an essential fact, and (4) a final fact.

In discussing the concept of ultimate fact as a final fact, the "Comment Note" in A.L.R. refers to *King* v. *Chase, supra*, as the leading case illustrating the view of some courts under which they treat as an ultimate fact only what was actually the final issue between the parties and consider as evidentiary any fact from which the ultimate fact is derived regardless of whether such evidentiary fact was essential to the judgment. However, it is stated in the "Comment Note" (142 A.L.R. at page 1248) that a comparatively small number of cases hold that, under such circumstances, the determination of a litigated question does not create an estoppel and that these cases express a minority view. Considering counsel's reliance on *King* v. *Chase, supra*, as well as the general tenor of his argument, it seems apparent that his contention is that it is only the final issue in the first suit which becomes an estoppel. We dismiss this contention since it is our opinion that such a definition of ultimate fact is contrary to the view of the majority of the courts.

While we reject the concept that it is only the final issue in the first action which creates a collateral estoppel in the second suit, there is no question but that such an estoppel occurs if "ultimate fact" is considered as being a fact in issue or a material element of the suit or an essential fact. However, under those circumstances, the use of the word "ultimate" actually adds nothing to the determination of the question in this respondent's case. We will, therefore, make our determination in his case in accordance with the principles stated in *Cromwell* v. *County of Sac*, 94 U.S. 351 (1876), and *Southern Pacific Railroad Co.* v. *United States*, 168 U.S. 1 (1897).

In *Cromwell* v. *County of Sac, supra*, at page 353, it was said: "* * * where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." In *Southern Pacific Railroad Co.* v. *United States, supra*, at pages 48-49, the Supreme Court made the following statement: "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed

in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." These rules have been quoted in many subsequent decisions (*Partmar Corporation* v. *Paramount Pictures Theatres Corporation, supra,* at page 91; *United States* v. *International Building Co.,* 345 U.S. 502, 504–505 (1953), reh. den. 345 U.S. 978; *United States* v. *Munsingwear, Inc.,* 340 U.S. 36, 38 (1950); *Mercoid Corporation* v. *Mid-Continent Investment Co.,* 320 U.S. 661, 671 (1944); *United States* v. *Moser,* 266 U.S. 236, 241 (1924)).

In the denaturalization suit, the court found that the respondent was an active member of the Communist Party and attended closed meetings of the Party at least from 1930 to 1936, inclusive; that in November 1932, together with other communists who had been selected or approved by the Communist Party, he went to Moscow, U.S.S.R., where he attended the Lenin School; and that about 1934 he became section organizer for the New Kensington district of the Party. The court also found that the respondent had penetrated sufficiently far into the councils of the Communist Party to be thoroughly familiar with its ultimate objective of overthrowing the Government of the United States by force and violence if necessary, and that from 1930 to 1936 the respondent was committed to the ultimate objectives of the Party. The court also found that in 1946 he joined the District of Columbia Communist Party.

We will first consider the questions which were at issue and controverted in the denaturalization suit and which were directly determined by the court. Since the Service and counsel did not offer in evidence a copy of the complaint and the answer in that action, we have found it necessary to determine the issues in that proceeding on the basis of the pertinent statutory provision, the judgment (Exh. 2), and the opinion of the court (Exh. 4; 152 F. Supp. 169). 8 U.S.C. 1451(a) authorizes the institution of denaturalization proceedings "on the ground that such order [of admission to citizenship] and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation."

Counsel apparently considers that one of the issues in the denaturalization proceeding was whether the respondent was attached to the principles of the Constitution of the United States. After stating in the penultimate paragraph of the opinion that the respondent's naturalization must be revoked because it was procured by material misrepresentations and concealment, it was stated that the same result was required by the court's findings that the respondent was not sincere in his representation that he was attached to the

586

principles of the Constitution of the United States and well disposed to the good order and happiness of the United States. There was no finding that the respondent was a member of the Communist Party at the time of his naturalization in 1943, but the court inferred (p. 176) from the respondent's activities between 1930 and 1936 and from his membership in 1946 that he was committed to the ultimate objectives of the Party at the time of naturalization and that he was not attached to the principles of the Constitution. Under the circumstances, the finding of nonattachment was merely a subsidiary one, was completely dependent upon the respondent's Communist Party membership and activity, and we believe it can be disregarded as an independent issue in the case.

In the first paragraph of the court's opinion, the concealments and misrepresentations which were alleged by the Government as the statutory basis for revocation were stated to be the respondent's "membership in the Communist Party, his prior arrests, his illegal departures from the United States to attend the Lenin School * * *, and his subsequent illegal entry into the United States." The respondent's illegal departure from the United States in November 1932, his use of a fraudulently obtained United States passport and his subsequent illegal entry do not appear to be points which were controverted because counsel conceded that the respondent had not legally entered or reentered the United States after November 12, 1932 (p. 174). The respondent's concealment of his arrests does not appear to have been an important issue because the court did not reach any definite conclusion as to whether the arrests were material except insofar as they might have led to discovery of the respondent's Communist Party membership and activities (p. 178).

The one remaining matter concerning which there was concealment and misrepresentation was the respondent's membership in the Communist Party. The court found that the designated naturalization examiner had asked the respondent at the time he filed his petition for naturalization, "Are you now or have you ever been a communist, a nazi, a fascist, or a radical of any type?" and that the respondent answered, "No." The respondent did not take the stand during the trial of the denaturalization suit and, hence, there was the uncontradicted testimony of the examiner concerning the question asked and the answer the respondent gave. Counsel apparently contends that the issue was whether the respondent gave false testimony before the examiner and not whether he was a member of the Communist Party. However, if the respondent had not been a communist or a member of the Communist Party, his negative answer would have been truthful. Accordingly, we conclude that the basic question and the principal point which was actually controverted in the denaturalization suit was whether the respondent had been a member of

the Communist Party during the 10 years preceding his naturalization. That this was the chief question in that proceeding is illustrated by the extent of the findings and discussion concerning that matter in the court's opinion.

We next consider the questions in controversy in this deportation proceeding. At the hearing, the respondent through counsel conceded that he is not a citizen or national of the United States, that he is a native of Russia, and that he entered the United States at New York on or about January 1, 1923. The only point in controversy in this deportation proceeding is the same as the one we have concluded was the principal point controverted in the denaturalization suit, that is, the respondent's membership in the Communist Party. This is subject to the qualification that the word "member" must be understood as it has been judicially defined in *Galvan* v. *Press*, 347 U.S. 522 (1954), and *Rowoldt* v. *Perfetto*, 355 U.S. 115 (1957). *Rowoldt* was decided on December 9, 1957, which was subsequent to the court's opinion dated June 13, 1957, in the denaturalization suit relating to this respondent. However, in *Rowoldt* the court affirmed the conclusions it had previously reached in the *Galvan* case.

In *Galvan* v. *Press*, *supra*, the court found the alien deportable but referred (p. 527) to a memorandum inserted in the Congressional Record indicating "that Congress did not provide that the three types of situations it enumerated in the 1951 corrective statute [Act of March 28, 1951, 65 Stat. 28] should be the only instances where membership is so nominal as to keep an alien out of the deportable class." The court concluded (p. 528) that support, or even demonstrated knowledge, of the Communist Party's advocacy of violence was not intended to be a prerequisite to deportation but that it "is enough that the alien joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will."

In the denaturalization suit against the respondent, the Government was required to meet a higher standard of proof than in a deportation proceeding, that is, it was required to establish its case by clear, unequivocal and convincing evidence. Although the *Galvan* case involved a deportation proceeding, we believe that the Government was required to establish in the denaturalization proceeding against the respondent that he was a "member" of the Communist Party as the term had been judicially defined. The opinion of the court, in the denaturalization suit against the respondent, does not mention the *Galvan* case but, since the court specifically stated that "mere membership" would not have been sufficient, we

believe it is apparent that it took cognizance of the judicial definition which had been given to the word "member."

As stated above, the rule laid down in *Cromwell* v. *County of Sac* and *Southern Pacific Railroad Co.* v. *United States, supra,* is that the judgment in the prior action operates as an estoppel as to those matters in issue or points controverted upon the determination of which the finding was rendered, and that a question or fact distinctly put in issue and directly determined in the first action must be taken as conclusively established in subsequent proceedings. We have concluded above that one of the matters in issue and points controverted (in fact, the principal one), upon the determination of which the judgment in the denaturalization suit was rendered, related to whether the respondent was a member of the Communist Party during the 10 years preceding his naturalization in 1943. This was an essential matter in issue in that proceeding and the court made a direct determination of that question. It found that the respondent had been an active member of that organization from at least 1930 to 1936 and that he was familiar with, and committed to, its ultimate objective of overthrowing the Government of the United States by force and violence if necessary. Accordingly, we hold that, under the doctrine of collateral estoppel by judgment, it has been established that the respondent during the period from 1930 to 1936 had been a "member" of the Communist Party of the United States as the term "member" has been judicially defined.

The court stated that the respondent was not found to have been actually a member of the Communist Party at the time of his naturalization in 1943. He joined the District of Columbia Communist Party in 1946 but was not very active. From the testimony of a witness concerning the 1946 membership of the respondent, the court found that the respondent was committed to the objectives of the Communist Party at that time and inferred that he was also committed to those objectives at the time of his naturalization in 1943. While the 1946 membership was pertinent in that connection, it was not so essential to that decision as to create an estoppel in this deportation proceeding. The Government offered no other evidence that the respondent was a member of the Communist Party in 1946, and we hold that his membership at that time has not been established.

Counsel also contends that the respondent is not deportable because the Government has not established Communist Party membership subsequent to his last entry on September 19, 1945, when he returned to the United States as a member of the armed forces of this country. As we have stated above, the Government has established that the respondent was a member of the Communist Party from 1930 to 1936 but not that he was a member in 1946. 8 U.S.C.

589

1251(a) (6) (C), in effect, authorized the deportation of an alien who has been, *after entry*, a member of the Communist Party of the United States. Hence, the respondent would not be deportable on the present record if membership were required to be established subsequent to his last entry on September 19, 1945. The question resolves itself, therefore, into whether the word "entry" in the statute can be said to mean either the respondent's original entry on January 1, 1923, or his illegal reentry following his trip to Moscow in November 1932. We have previously held that the original entry may be used in a deportation proceeding under 8 U.S.C. 1251(a) (6) (*Matter of H——*, A-4743741, Int. Dec. No. 956 (1958)).

Counsel cited *Tak Shan Fong* v. *United States*, 359 U.S. 102 (1959); *Petition of Zaino*, 131 F. Supp. 456 (S.D.N.Y., 1955); and *In re Tchakalian's Petition*, 146 F. Supp. 501 (N.D. Cal., 1956). These cases relate to petitions for naturalization which had been filed under the Act of June 30, 1953 (67 Stat. 108; 8 U.S.C. 144a, 1952 ed., Supplement V). The particular question related to the construction to be given to language which permitted the naturalization of an alien member of the armed forces who had been lawfully admitted to the United States and had been physically present within the United States for a single period of at least one year at the time of entering the armed forces. *In re Echiverri*. 131 F. Supp. 674 (D. Hawaii, 1955), merely involved the question of whether the alien had been lawfully admitted on December 21, 1946. These cases offer no support to this contention of counsel.

The remaining case cited in this connection was *Bonetti* v. *Rogers*, 356 U.S. 691 (1958). In that case the alien entered the United States in 1923 and was a member of the Communist Party from 1932 to 1936. He abandoned all rights of residence in the United States on June 28, 1937. Subsequently, he obtained a quota immigration visa abroad and on October 8, 1938, he was admitted to the United States for permanent residence. The court stated that the Government was not seeking to annul any right of presence which Bonetti acquired under the 1923 entry and that it could not be that entry which the deportation statute contemplated since Bonetti had abandoned all rights of residence under that entry. Counsel interprets the *Bonetti* case as holding that Communist Party membership is a ground for deportation only if it occurred after "the last legal entry." Bonetti does not hold that it is only the *last* entry which governs since he had last entered in September 1939 after a one-day visit to Mexico. Similarly, that case contains no language indicating that a person who entered unlawfully and who thereafter became a member of the Communist Party could escape deportation under 8 U.S.C. 1251(a) (6). In other words, the case also

does not rule that deportation under that statutory provision must be predicated on a *legal entry*.

The word "entry" is defined in 8 U.S.C. 1101(a)(13) as any coming of an alien into the United States from a foreign port or place with certain exceptions which are inapplicable to the case of this respondent. The special inquiry officer adopted the four allegations in the order to show cause as his four findings of fact. The only finding concerning entry was that the respondent entered the United States on January 1, 1923. Hence, it appears that the Government is seeking to annul the respondent's "right of presence" acquired under the 1923 entry. There is nothing in this record which would indicate that the respondent had any intention of abandoning his residence in the United States when he went to Moscow in 1932 to attend the Lenin School or when he departed for duty overseas as a member of the United States Armed Forces on July 3, 1943. In relation to this respondent's case, we hold that the word "entry" in 8 U.S.C. 1251(a)(6) refers to the respondent's entry on January 1, 1923, and that he is deportable because thereafter he was a member of the Communist Party of the United States. The following order will be entered.

**Order:** It is ordered that the motion of the Service dated December 8, 1959, be granted and that our order of October 27, 1959, be withdrawn.

*It is further ordered* that the respondent's appeal from the order of deportation be dismissed.